**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PCT International Incorporated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Holland Electronics LLC,<br><br>　　　　　Defendant. | No. CV-12-01797-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Plaintiff PCT International Inc. ("PCT")'s Renewed Motion to File Under Seal Certain Documents (Doc. 216) and Defendant Holland Electronics, LLC ("Holland")'s Revised Motion to File Under Seal (Doc. 214). The Court now rules on the motions.

**I.    Background**

Both parties in this case filed a number of motions to file under seal dispositive motions (including responses and replies) and various documents attached to dispositive motions. The Court denied without prejudice the motions to file under seal, finding that the parties had not met the standard for sealing documents attached to a dispositive motion under Ninth Circuit Court of Appeals case law. (Doc. 213). The Court ordered the parties to each file a single motion to file under seal addressing all documents sought to be sealed and for each document, specifying with particularity the compelling reasons why that document should be sealed. (*Id.* at 8).

Each party has filed a motion to file under seal as well as a response to the other party's motion. (Docs. 214, 216, 217, 218). The Court now rules on the motions.

## II. Legal Standard

It has long been recognized that the public has a general right of access "to inspect and copy . . . judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This right extends to all judicial records except those that have "traditionally been kept secret for important policy reasons," namely grand jury transcripts and certain warrant materials. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Id.* (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "[T]he strong presumption of access to judicial records applies fully to dispositive pleadings, including motions for summary judgment and related attachments," because "the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.'" *Kamakana*, 447 F.3d at 1179 (quoting *Valley Broadcasting Co. v. U.S. Dist. Ct. for Dist. of Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986)).

"A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Id.* at 1178 (citing *Foltz*, 331 F.3d at 1135). The party must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id.* at 1178-79 (internal quotation marks and citations omitted). A court deciding to seal judicial records must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1179 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

The presumption of public access is not rebutted merely because "documents subject to a protective order are filed under seal as attachments to a dispositive motion." *Foltz*, 331 F.3d at 1136. A party seeking to seal a judicial record must still meet its heavy burden of demonstrating compelling reasons exist for sealing. *See Kamakana*, 447 F.3d at

1179.

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* (quoting *Nixon*, 435 U.S. at 598). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

Accordingly, a party's allegations that material is "confidential" or "business information" are insufficient to justify sealing court records containing such material unless the party proves the existence of compelling reasons for sealing. *Krause v. Nev. Mut. Ins. Co.*, 2013 WL 3776146, at *5 (D. Nev. July 16, 2013) (citing *Kamakana*, 447 F.3d at 1179). Moreover, because "confidentiality alone does not transform business information into a trade secret," a party alleging trade secret protection as a basis for sealing court records must show that the business information is in fact a trade secret. *St. Clair v. Nellcor Puritan Bennett LLC*, 2011 WL 5335559, at *2 (D. Ariz. Nov. 7, 2011). Thus, only in extremely limited circumstances will confidential information actually merit the sealing of court records. *See Kamakana*, 447 F.3d at 1182 (finding that conclusory statements about the content of documents did not provide "compelling reasons sufficiently specific to bar the public access to the documents").

### III. Analysis

#### A. PCT's Motion to File Under Seal

PCT asks to file under seal six documents that it asserts contain "highly confidential commercially sensitive information." (Doc. 216 at 2). The Court will address each document in turn.

##### 1. PCT's License Agreements

PCT seeks to file under seal the excerpted expert report of David A. Haas previously attached as Exhibit 5 to the Declaration of Jamie R. Kurtz. (*Id.* at 5). This

1  report contains, among other information, a discussion of royalty rates that PCT pays to
2  license other patents for its use. PCT submits the declaration of PCT's vice president
3  Brandon Wilson, who testifies that PCT maintains the secrecy of its license agreements
4  and these agreements are important to PCT's competitive standing during patent
5  licensing negotiations. (Doc. 216-2 at 2).

6  Royalty rates contained in a license agreement can be trade secrets. *See In re*
7  *Electronic Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008). "A 'trade secret may consist
8  of any formula, pattern, device or compilation of information which is used in one's
9  business, and which gives him an opportunity to obtain an advantage over competitors
10 who do not know or use it.'" *Id.* (quoting Restatement (First) of Torts § 757 cmt. b). In
11 *MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101 (D. Ariz. 2010), the Court concluded that a
12 license agreement including the royalty rate charged to licensees was a trade secret
13 because the information was not generally known by others, the information was not
14 readily ascertainable by proper means, and the license terms were business decisions that
15 affected profitability. 743 F. Supp. 2d at 1106.

16 The release of trade secrets is a compelling reason sufficient to outweigh the
17 public's interest in disclosure. *See Kamakana*, 447 F.3d at 1179. The Court concludes
18 that PCT has demonstrated compelling reasons for sealing this document, and will permit
19 PCT to file this document under seal.

20 ### 2.    PCT's Bag Label Drawings

21 PCT seeks to file under seal bag and connector label drawings originally submitted
22 as Exhibits 13, 37, and 38 to the Harting Declaration. (Doc. 216 at 7). These drawings
23 contain specifications for the packaging in which PCT products are sent to customers,[1]
24 and show design elements such as PCT's logo, the product name (for example,
25 "compression connectors"), the typeface used for various pieces of text, and so forth. The
26 drawings also show the identity of PCT's manufacturer.

---

28 [1] The connector label drawings contain specifications for a vinyl label that is presumably affixed to PCT's connectors.

- 4 -

1  PCT asserts that the identity of its manufacturer is a protectable trade secret and
2  that it has not publicly disclosed this identity. (*Id.* at 9). But PCT has disclosed its
3  manufacturer several times, most significantly in its complaint in a collateral action in the
4  District of Nevada. *See* Complaint at 5-7, *Andes Industries, Inc., et al. v. Cheng Sun Lan,*
5  *et al.*, No. 2:14-cv-00400-APG-GWF (D. Nev. Mar. 18, 2014). The Court takes judicial
6  notice of the allegations in that complaint not for the truth of those allegations but merely
7  for the fact that PCT filed them into the public record. Fed. R. Evid. 201(c)(1); *Peel v.*
8  *BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1157-58 (C.D. Cal. 2011). Because
9  PCT has publicly disclosed the identity of its manufacturer, this information cannot
10 qualify as a trade secret. *See MMI*, 743 F. Supp. 2d at 1105-06; A.R.S. § 44-401(4)(b)
11 (Arizona Uniform Trade Secrets Act). Accordingly, PCT has not shown that these
12 documents should be filed under seal.

### 3. PCT's Engineering Drawings

PCT also seeks to file under seal various engineering drawings of its connector designs originally submitted as Exhibits 36 and 39 to the Harting Declaration. (Doc. 216 at 6). These drawings show the detailed dimensional specifications for PCT's connectors, including measurements, design tolerances, and materials of manufacture. PCT asserts that it is difficult to reverse engineer PCT's connectors to determine the precise dimensions of each component and that it would be extremely difficult and expensive to ascertain PCT's precise design tolerances from finished connectors. (Doc. 216-2 at 2-3). PCT also asserts that these design tolerances have significant economic value, PCT has expended significant resources to define the optimal tolerances, and PCT does not publicly disclose these tolerances. (*Id.* at 3). PCT makes similar arguments concerning materials of manufacture. (*Id.* at 4-5).

Because the Court finds portions of this information to constitute trade secrets, the Court will permit PCT to file these documents under seal. However, the drawings themselves are not trade secrets because they are merely schematics of connectors that PCT makes available for sale. Thus, PCT's redacted public version of these documents

1 must redact only the numbers in the schematics that represent the measurements and design tolerances. The materials of manufacture must not be redacted.

### B. Holland's Response to PCT's Motion to File Under Seal

PCT originally also sought to file under seal documents that Holland had designated as protected under the protective order. Holland argues in its response to PCT's motion to file under seal that PCT should be permitted to file these documents under seal. (Doc. 218 at 7). Because Holland has an interest in preserving the confidentiality of these documents, the Court will address Holland's arguments. The Court will address each document in turn.

### 1. Exhibit 6 to the Yang Declaration

Holland has redacted portions of the document originally filed as Exhibit 6 to the Yang Declaration that it considers to contain confidential information that "constitutes Holland's trade secrets." (*Id.* at 7). The Court has examined this document and notes that Holland's proposed redactions include photos of its connectors and industry-standard tests for tensile strength. Because Holland sells its connectors to the public, there is nothing about conducting tests upon those connectors that falls into the classification of a trade secret. Metrics of how well Holland's connectors perform in various environments are not trade secrets.

This document also contains, however, reproductions of Holland's engineering drawings that show the dimensions for components of Holland's connectors as well as design tolerances. For the same reasons as the Court discussed above with respect to PCT's engineering drawings, these are protectable trade secrets. But because the engineering drawings are included in this document for purposes other than referencing the dimensions and design tolerances, redaction of this irrelevant information is more appropriate than even filing the entire document under seal but redacting only the engineering drawings. Accordingly, the Court will permit this document to be filed under seal but the redacted public document must redact only the dimensions and design tolerances in the engineering drawings.

### 2. Exhibit 8 to the Yang Declaration

The document originally submitted as Exhibit 8 to the Yang Declaration is similar to Exhibit 6 to the Yang Declaration in that Holland proposes to redact an engineering drawing as well as a description of a test performed upon Holland's connectors. Because the test procedure was performed in accordance with industry standards and Holland's connectors are publicly available, Holland has not shown that selecting and performing tests upon its connectors constitute trade secrets. For the same reasons as discussed with respect to Exhibit 6 to the Yang Declaration, the Court will permit Exhibit 8 to the Yang Declaration to be filed under seal but the redacted public document must redact only the dimensions and design tolerances in the engineering drawings.

### 3. Exhibit 5 to the Kurtz Declaration

Holland argues that the document originally submitted as Exhibit 5 to the Kurtz Declaration contains Holland's trade secrets justifying sealing. (Doc. 218 at 7). Because the Court has already concluded that PCT may file this document under seal, the Court need not address Holland's contentions. It appears to the Court that the protective order between PCT and Holland will require PCT to incorporate Holland's suggested redactions.

### 4. Exhibit 7 to the Kurtz Declaration

Holland has marked portions of the document originally submitted as Exhibit 7 to the Kurtz Declaration that it considers to be its trade secrets. These portions of the document include engineering drawings of Holland's connectors and a report of a tensile test performed on Holland's connectors. For the reasons discussed with respect to Exhibit 6 to the Yang Declaration, the Court will permit PCT to file this document under seal but the redacted public version must redact only the dimensions and design tolerances in engineering drawings.

The Court further notes that Exhibit 7 to the Kurtz Declaration describes, in non-redacted text, that industry standard tests for "sealing performance and minimum axial pull forces" exist, including ANSI/SCTE 60 2004 and ANSI/SCTE 123 2006. The exhibit

1 also states that "[o]ne of ordinary skill in the art would recognize that the moisture penetration and axial pull tests are contained in the specific industry standards provided above and are the primary mechanical performance tests that deal with the termination of the cable to a connector by axial crimping." Following this admission, it is somewhat incredible that Holland attempts to redact the results of these industry standard tests when any person of ordinary skill in the art would be familiar with these tests and can obtain Holland's connectors to perform such tests. Thus, Holland's proposed redactions are inappropriate.

### 5. Exhibit 1 to the Harting Declaration

Holland asks that the Court permit PCT to file under seal the document originally submitted as Exhibit 1 to the Harting Declaration. (Doc. 218 at 7). The Court has reviewed Holland's proposed redactions and finds inconsistencies that negate any protective effect. For example, although Holland redacts a column in a table that contains Holland part numbers for "outer barrel" component parts, Holland does not redact a sentence that lists those Holland products in which part number SLCU-6QA-CC is used. Regardless, Holland has not shown that its part numbers are themselves trade secrets. Holland also redacts references to a deposition of Michael Holland, but the references to a lawsuit filed by John Mezzalingua Associates, Inc. d/b/a PPC cannot be trade secrets because all lawsuits are public record. Similarly, Michael Holland's testimony about redesigning Holland components is not a trade secret. The mere fact that this testimony could be embarrassing to Holland does not convert it into such. *See Kamakana*, 447 F.3d at 1179.

The Court also fails to see how drawings of Holland outer barrel components showing no dimensions or design tolerances qualify as a trade secret when the level of detail in the drawings is no greater than that contained in PCT's patent and anyone could disassemble a Holland connector and make such drawings. These drawings do not merit sealing.

Nevertheless, because this document also contains Holland's engineering

drawings, the Court will permit PCT to file this document under seal, but the only redactions in the unsealed version shall be the dimensions, design tolerances, and manufacturer identities contained within the reproductions of the engineering drawings.

### 6. Exhibit 6 to the Harting Declaration

Holland requests that PCT be permitted to file under seal the document originally submitted as Exhibit 6 to the Harting Declaration. (Doc. 218 at 7). The information proposed to be redacted in this document is Holland's test data gathered in the performance of industry-standard tests on Holland's connectors. For the reasons already stated, the parties have not demonstrated that this data is a trade secret. Nor does the description of Holland's connector after crimping constitute a trade secret. The Court will not permit this document to be filed under seal.

### 7. Exhibit 22 to the Harting Declaration

The document originally submitted as Exhibit 22 to the Harting Declaration is a transcript of a deposition of Reed Gibson, a Holland employee, who testified regarding tensile strength tests that Holland conducted on its connectors. For the reasons already stated, the Court will not permit this document to be filed under seal.

### 8. Exhibit 27 to the Harting Declaration

The document originally submitted as Exhibit 27 to the Harting Declaration consists of an e-mail exchange between Holland and ezConn concerning a proposed change to one of Holland's connectors. Although the contents of this e-mail may be embarrassing to Holland, there has been no showing that it contains trade secret information. However, the engineering drawing attached to the e-mail, which may not represent a final released product, may be a trade secret. Therefore, PCT may file this document under seal but the redacted public version must redact only the engineering drawing.

### 9. Exhibit 28 to the Harting Declaration

The document originally submitted as Exhibit 28 to the Harting Declaration is similar to Exhibit 27 in that it consists of an e-mail between Holland and ezConn along

with engineering drawing attachments. For the same reasons, PCT may file this document under seal but the redacted public version must redact only the engineering drawings.

### 10. Exhibit 9 to the Kurtz Declaration

The document originally submitted as Exhibit 9 to the Kurtz Declaration contains a report concerning a royalty agreement between Holland and a third party. Because royalty rates contained in a license agreement can be trade secrets, and Holland alleges that Holland has maintained this license agreement as a confidential trade secret, (Doc. 220 at 5), the Court will permit PCT to file this document under seal.

### 11. Exhibit 11 to the Kurtz Declaration

The document originally submitted as Exhibit 11 to the Kurtz Declaration is a transcript of a deposition in which the deponent testifies as to the reasonable royalty rate in this case. The Court will permit this document to be filed under seal with the single-line redaction in the public version proposed by Holland.

### 12. Exhibit 29 to the Harting Declaration

The document originally submitted as Exhibit 29 to the Harting Declaration is an excerpt from an expert report that discusses damages in terms of a reasonable royalty rate between PCT and Holland. As with Exhibit 11 to the Kurtz Declaration, the Court will permit this document to be filed under seal.

### 13. Exhibit 30 to the Harting Declaration

The document originally submitted as Exhibit 30 to the Harting Declaration contains a single-page spreadsheet listing Holland's sales data for certain connectors, including the average sales price. Because this information constitutes a trade secret, the Court will permit it to be filed under seal.

### 14. Exhibit 21 to the Harting Declaration

The document originally submitted as Exhibit 21 to the Harting Declaration is a deposition transcript in which the deponent testified as to the historical relationship between Holland and its parent company Amphenol with respect to sales. Because this testimony was strictly historical and not prospective, the Court cannot conclude that it is

1 a trade secret. The Court will not permit PCT to file this document under seal.

### 15. Exhibit 31 to the Harting Declaration

The document originally submitted as Exhibit 31 to the Harting Declaration is a deposition transcript in which the deponent testified as to the accounting reports that Holland generates and regularly transmits to its parent company Amphenol. The text that Holland proposes to redact concerns the fact that Holland uses accounting software each month to report the number of employees, the income statement, balance sheet, intercompany sales, and the like. There are no specific numbers concerning any of these reports. There also is no evidence that the fact Holland reports regularly to its parent company is a trade secret. Indeed, anyone with business experience would expect a subsidiary to provide regular accounting reports to its parent company. The Court will not permit PCT to file this document under seal.

### 16. Exhibit 13 to the Kurtz Declaration

The document originally submitted as Exhibit 13 to the Kurtz Declaration is a deposition transcript in which the deponent discusses a licensing agreement between Holland and a third party. For the reasons discussed with respect to Exhibit 9 to the Kurtz Declaration, the Court will permit PCT to file this document under seal.

### C. Holland's Motion to File Under Seal

Holland asks in its motion to file under seal to seal ten documents that it alleges contain confidential information and trade secrets. (Doc. 214 at 6-7). The Court will address each document in turn.

#### 1. Exhibit 1

The document lodged under seal as Exhibit 1 to the Declaration of Greer Shaw in Support of Defendant Holland Electronics, LLC's Revised Motion to File Under Seal (the "Shaw Declaration") (Doc. 214-1) is the expert report of Carl G. Degen and contains a discussion of proposed royalty rates, an existing license agreement between Holland and a third party, and Holland's sales data. Because these are trade secrets, the Court will permit this document to be filed under seal.

**2.      Exhibit 2**

Holland asserts that Exhibit 2 to the Shaw Declaration contains confidential trade secrets justifying sealing. (Doc. 214 at 12). This document contains excerpts from a deposition transcript in which certain internal Holland tests are described as well as royalty rates from a particular licensing agreement. Because Holland's royalties and licensing agreements are trade secrets, the Court will permit this document to be filed under seal. Holland must not redact any portions of the transcript pertaining to Holland's testing of its connectors. For the reasons discussed with respect to Exhibit 7 to the Kurtz Declaration, the results of testing Holland's products according to industry-standard criteria, even with certain modifications to those products, cannot be a trade secret because this information is easily obtainable through proper means.

**3.      Exhibit 3**

Exhibit 3 to the Shaw Declaration is the expert report of David A. Haas and contains discussions of royalties and a licensing agreement between Holland and a third party. Because this information constitutes Holland's trade secrets, the Court will permit this document to be filed under seal. However, as with Exhibit 2, Holland must not redact any portions of the transcript pertaining to Holland's testing of its connectors.

**4.      Exhibit 4**

Exhibit 4 to the Shaw Declaration is a series of photographs of Holland connectors. These photos show connectors that have been subjected to Holland's testing protocol. Holland's label of this information as confidential does not automatically elevate it to the status of trade secret. Because these connectors are publicly available, and Holland has not demonstrated that the act of performing a standard test upon publicly available connectors is a trade secret, the Court will not permit these photos to be filed under seal.

**5.      Exhibit 5**

Exhibit 5 to the Shaw Declaration is an infringement rebuttal report of Daniel Whittle. This document contains, among other things, reproductions of Holland's

engineering drawings showing the dimensions and design tolerances of its connectors, photos showing Holland connectors after crimping, and discussion of photos of Holland connectors. For the reasons previously discussed with respect to other proposed sealed documents, although the dimensions and design tolerances of Holland's connectors are trade secrets, Holland's tests upon those connectors are not. The Court will permit Holland to file this document under seal but the redactions in the public version must be only the dimensions and design tolerances listed within the reproductions of Holland's engineering drawings.

### 6. Exhibit 6

Exhibit 6 to the Shaw Declaration is an expert report containing Holland's engineering drawings as well as discussion of Holland's tests performed upon its connectors. For the reasons previously discussed with respect to other documents, the Court will permit this document to be filed under seal. However, Holland's redacted public version of this document must redact only the dimensions and design tolerances contained within Holland's engineering drawings.

### 7. Exhibit 7

Exhibit 7 to the Shaw Declaration is a Holland report describing the procedure and outcome of an axial pull force test of Holland's connectors. Although this information may be confidential, Holland has not shown that it is a trade secret because these results could be easily duplicated by anyone with access to Holland's connectors and industry-standard test equipment. The Court will not permit this document to be filed under seal.

### 8. Exhibit 8

Exhibit 8 to the Shaw Declaration is a Holland report describing the procedure and outcome of an axial force pull test of Holland's connectors. For the same reasons as discussed with respect to the preceding document, the Court finds that Holland has not established that this report is a trade secret and the Court will not permit this document to be filed under seal.

**9.** **Exhibit 9**

Exhibit 9 to the Shaw Declaration is excerpts from the deposition of Michael Holland, in which he discusses a license agreement between Holland and a third party, including royalty rates. Because royalty rates and the terms of licensing agreements are trade secrets, the Court will permit this document to be filed under seal.

**10.** **Exhibit 10**

Exhibit 10 to the Shaw Declaration is excerpts from the deposition of Jason Holt, in which he discusses a license agreement between Holland and a third party. Because the terms of this license agreement are a trade secret, the Court will permit this document to be filed under seal.

**B.** **PCT's Response to Holland's Motion to File Under Seal**

PCT argues in its response to Holland's motion to file under seal that two documents originally filed by Holland contain PCT's confidential information and should be filed under seal. (Doc. 217 at 2).

**1.** **Exhibit 3**

PCT asserts that Exhibit 3 to the Shaw Declaration contains information concerning licensing agreements between PCT and third parties, and as such, contains trade secrets justify sealing. (*Id.* at 3). For the same reasons as the Court has discussed with respect to Holland's licensing information, the Court will permit Holland to file this document under seal. Accordingly, Holland must incorporate PCT's proposed redactions when filing the public version of this document.

**2.** **Exhibit 11**

Exhibit 11 to the Shaw Declaration consists of bag drawings for PCT products showing the dimensions, color, and text of the packaging in which PCT products are sold. As the Court has already discussed, this information does not constitute a trade secret. The Court will not permit Holland to file this document under seal.

**IV.** **Conclusion**

The Court previously stated that after ruling on the motions to file under seal, it

would set a briefing schedule for the parties' new versions of their dispositive motions. (Doc. 213 at 9). Because the parties have already written their motions, the Court will set an accelerated briefing schedule.

Accordingly,

**IT IS ORDERED** granting in part and denying in part PCT's Renewed Motion to File Under Seal Certain Documents (Doc. 216).

**IT IS FURTHER ORDERED** that PCT may file under seal as needed the following documents identified in Doc. 216-1, Exhibit A: (1) "Kurtz Decl. Ex. 5, Excerpts of the Expert Report of David Haas served on April 7, 2014"; (2) "Harting Decl. Ex. 36, PCT top-level engineering drawing for its TRS-6L coaxial cable connector, produced by PCT during fact discovery at Bates number PCTH0006882"; (3) "Harting Decl. Ex. 39, Excerpts of exemplary PCT engineering specifications for the ERS-6 and ERS-59 coaxial cable connectors, produced by PCT during fact discovery as Bates numbers: PCTH0280484, PCTH0280489, PCTHS0013688, pp. 1 and 6 (native)"; (4) "Yang Decl. Ex. 6, Infringement Rebuttal report of Daniel J. Whittle, PHD in Support of Defendant, dated April 7, 2014, including parts 1-4"; (5) "Yang Decl. Ex. 8, Report Regarding Available and Acceptable Non-Infringing Alternatives of Daniel J. Whittle, PHD in Support of Defendant, dated April 7, 2014"; (6) "Kurtz Decl. Ex 7, Report Regarding Available and Acceptable Non-Infringing Alternatives of Daniel J. Whittle, PhD, served on April 7, 2014"; (7) "Harting Decl. Ex. 1, Infringement Report of Dr. James Dickens, Ph.D., including appendices A-N thereto"; (8) "Harting Decl. Ex. 27, Email correspondence between Holland & EZconn, marked as Holland Deposition Exhibit 46, and produced by Holland during fact discovery as Bates number HOLL 42324 – HOLL 42325"; (9) "Harting Decl. Ex. 28, Email correspondence between Holland & EZconn, marked as Holland Deposition Exhibit 47, and produced by Holland during fact discovery as Bates number HOLL 44494 – HOLL 44496"; (10) "Kurtz Decl. Ex. 9, Holland Production Documents HOL2002827-HOL2002867"; (11) "Kurtz Decl. Ex. 11, Excerpts of the deposition of David A. Haas taken on April 21, 2014"; (12)

1  "Harting Decl. Ex. 29, Excerpts from the Expert Report of David A. Haas"; (13) "Harting Decl. Ex. 30, Defendant's Fifth Supplemental Response to Plaintiff's First Set of Interrogatories"; and (14) "Kurtz Decl. Ex. 13, Excerpts of the deposition of David A. Haas taken on April 21, 2014."

**IT IS FURTHER ORDERED** granting in part and denying in part Holland's Revised Motion to File Under Seal (Doc. 214).

**IT IS FURTHER ORDERED** that Holland may file under seal as needed the following documents that Holland has lodged under seal as exhibits to the Shaw Declaration (Doc. 214-1): (1) Exhibit 1; (2) Exhibit 2; (3) Exhibit 3; (4) Exhibit 5; (5) Exhibit 6; (6) Exhibit 9; and (7) Exhibit 10.

**IT IS FURTHER ORDERED** that for each document a party files under seal, that party shall also file a redacted version not under seal. If the Court has specified the scope of redactions in this Order, then the party shall comply with those redactions. If the Court has not specified the scope of redactions in this Order, then the party shall redact according to the proposed redactions previously submitted to the Court. Failure to redact according to this Order will result in the Court striking the nonconforming document in both its sealed and unsealed versions and not considering it on summary judgment.

**IT IS FURTHER ORDERED** that PCT nor Holland shall not file any documents under seal other than those explicitly permitted in this Order.

**IT IS FURTHER ORDERED** that to the extent the Court has declined to permit the filing of a particular document under seal, any information contained in that document is not subject to the Protective Order (Doc. 53) for purposes of summary judgment.

**IT IS FURTHER ORDERED** that the parties may, on or before December 1, 2014, file the following motions: (1) PCT's motion to exclude the expert opinion of David A. Haas; (2) PCT's motion to exclude the expert opinion of Daniel J. Whittle; and (3) Holland's motion for summary judgment (alternatively, for partial summary judgment and to preclude any theory of indirect infringement for lack of disclosure). Any responses

1   are due December 8, 2014. Any replies are due December 15, 2014.
2      Dated this 18th day of November, 2014.

                  James A. Teilborg
                  Senior United States District Judge