**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PCT International Incorporated, | No. CV-12-01797-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Holland Electronics LLC, | |
| Defendant. | |

Pending before the Court are Defendant Holland Electronics LLC ("Holland")'s Motion, and Memorandum in Support Thereof, for Sanctions for PCT International Inc.'s Protective Order Violation (Doc. 222); Defendant Holland Electronics, LLC's Renewed Motion for Summary Judgment on Infringement, or Alternatively, Partial Summary Judgment on Damages and Renewed Motion to Preclude any Theory of Indirect Infringement for Lack of Disclosure (Doc. 223); Plaintiff's Resubmitted Motion to Exclude Portions of the Expert Reports of Daniel J. Whittle, PhD (Doc. 229); Plaintiff's Resubmitted Motion to Exclude the Expert Opinion of David A. Haas (Redacted) (Doc. 233); Plaintiff's Resubmitted Motion to Exclude the Expert Opinion of David A. Haas (Filed under Seal) (Doc. 237); and Plaintiff's Motion for Leave to File Non-Electronically Exhibit 26 to Plaintiff's Separate Statement of Additional Material Facts in Support of PCT's Opposition to Holland's Renewed Motion for Summary Judgment (Doc. 260). The Court now rules on the motions.

## I.    Motion for Sanctions

Holland moves for sanctions against Plaintiff PCT International Incorporated

("PCT") for PCT's alleged violation of the Protective Order issued in this case. (Doc. 222 at 4). The Court previously entered a Protective Order pursuant to Federal Rule of Civil Procedure ("Rule") 26(c) that permits the parties to designate materials produced during discovery as "confidential" or "outside attorneys' eyes only." (Doc. 53). The Protective Order limits the parties' ability to use and disclose these designated materials, and it orders that designated materials "shall not be used or disclosed for any purpose other than the litigation of this action." (*Id.* at 2).

PCT is involved in litigation with its former supplier EZconn Corporation in the United States District Court for the District of Nevada. In that litigation, PCT filed a document giving rise to Holland's instant motion for sanctions. The relevant portion of PCT's document is as follows:

> Plaintiffs believe that third party discovery from Holland Electronics, LLC ("Holland") will lead to documents that support personal jurisdiction over eGtran. [PCT] is currently involved in a patent infringement lawsuit against Holland in the District of Arizona. Case No. 12-cv-01797-PHX-JAT (D. Ariz.). During discovery in that case, Holland produced a number of documents pursuant to a protective order that may serve as evidence of jurisdictional facts relating to eGtran. The Arizona Court issued an order, attached as Exhibit G to the Harting Declaration, Dkt. No. 36, describing the documents at a high level. The Holland documents generally relate to:
>
> - EZconn/eGtran's disclosure to Holland of "the price at which it offered to manufacture PCT's product." Dkt. No. 36, Exhibit G at 4-5.
>
> - EZconn/eGtran's disclosure to Holland of "the quantities and shipment dates of PCT compression connector orders." *Id.* at 5
>
> - Communications from EZconn/eGtran comprising "certain e-mail attachments to Holland in an e-mail with the subject line 'RE: PCT.' *Id.*
>
> - An email from EZconn/eGtran to Holland forwarding "copies of communications and a financial transaction between PCT and EZconn concerning a dispute regarding loans made from EZconn to PCT." *Id.*
>
> - Communications from Holland to EZconn/eGtran asking "EZconn to delete e-mails concerning PCT after reading them because Holland was concerned about getting sued for 'interference.' *Id.*

1    Plaintiffs' Reply Memorandum of Points and Authorities in Support of Plaintiffs' Motion

2    for Leave to Conduct Jurisdictional Discovery at 14:16-15:6, *Andes Indus., Inc. et al. v.*

3    *EZconn Corp. et al.*, No. 2:14-cv-00400-APG-GWF (D. Nev. Oct. 16, 2014), ECF No. 60

4    (grammatical errors in original).

5        Holland alleges that the bullet points in the above-quoted portion of PCT's filing

6    contain Holland's confidential information designated pursuant to the Protective Order;

7    thus, Holland claims, PCT has violated the Order. (Doc. 222 at 4). PCT responds that all

8    of the details concerning the documents are direct quotations from the Court's June 3,

9    2014 Order (Doc. 198). (Doc. 241 at 3). The Court has compared the details quoted in

10   PCT's filing with its statements in its June 3, 2014 Order and they are identical. *See*

11   (Doc. 198 at 4-5). This is not surprising, because PCT's filing cites to the Court's Order

12   and uses quotation marks in its description of the documents.

13       The Protective Order provides that "[a]ny Designated Material which becomes

14   part of an official judicial proceeding . . . is public." (Doc. 53 at 6). Furthermore, the

15   Court's orders are public documents; information contained in them is public and cannot

16   be subject to any protective order. PCT did not disclose or use confidential information

17   under the Protective Order when it quoted the Court's June 3, 2014 Order. The Court will

18   deny Holland's motion.

19   **II.     Holland's Motion for Summary Judgment**

20       Holland moves for summary judgment on the issue of infringement, alleging that

21   it is not a direct infringer and there is no evidence of indirect infringement. (Doc. 223 at

22   2).[1] Holland also moves for partial summary judgment on damages. (*Id.*)

23       **A.     Summary Judgment Standard**

24       Summary judgment is appropriate when "the movant shows that there is no

25   genuine dispute as to any material fact and the movant is entitled to judgment as a matter

26   of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely

27   disputed must support that assertion by . . . citing to particular parts of materials in the

28

---

[1] All page number references are to PDF page numbers.

record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

### B.   Direct Infringement

Holland argues that PCT cannot succeed on its claim against Holland for direct infringement of U.S. Patent 6,042,422 (filed Oct. 8, 1998) (the "'422 Patent") because claim 1 of the '422 Patent requires that the coaxial connector be crimped to a cable and Holland sells, but does not crimp, connectors. (Doc. 223 at 3-4).

- 4 -

### 1.      Legal Standard

A person is liable for patent infringement if, without permission of the patentee, that person "makes, uses, offers to sell, or sells any patented invention[] within the United States . . . during the term of the patent therefor." 35 U.S.C. § 271(a). "A determination of patent infringement requires a two-step analysis." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004). First, the court must interpret the claims "to determine their scope and meaning"; this is a question of law for the court. *Id.* Second, the court must "then compare the properly construed claims to the allegedly infringing device." *Id.* "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents." *Id.* Although this second step is a factual question, "[a]n infringement issue is properly decided upon summary judgment when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

### 2.      Analysis

Claim 1 of the '422 Patent contains the following limitation:

> . . . said collapsible band forming an annular rib projecting inward toward said inner tube when said outer barrel is axially compressed . . .

'422 Patent col.7 ll.1-3. Holland contends that PCT's own infringement expert admitted that Holland's products do not meet this limitation because as sold, the outer barrel has not yet been axially compressed. (Doc. 223 at 3-4). Thus, according to Holland, infringement only occurs when someone other than Holland "actually takes a Holland connector and attaches it to a piece of coaxial cable." (*Id.* at 5).

Holland's argument fails because it misconstrues claim 1 of the '422 Patent. In construing claims, the Court first looks to the ordinary and customary meaning of the claim terms themselves. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). Claim 1 does not require that the collapsible band forms an annular rib and the

outer barrel *is* axially compressed; it requires that the collapsible band forms an annular rib *when* the outer barrel is axially compressed. Thus, claim 1's language is one of capability and not of immediate characteristics.

In *Intel Corporation v. United States International Trade Commission*, 946 F.2d 821 (Fed. Cir. 1991), the claim at issue required "programmable selection means" and used language relating to capability, namely "*when* said alternate addressing mode is selected." 946 F.2d at 832. There, the Federal Circuit Court of Appeals ("Federal Circuit") held that the accused device need only be capable of operating in the alternate addressing mode to be infringing. *Id.* In *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010), the Federal Circuit clarified that when a claim "recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode." 626 F.3d at 1204 (quoting *Intel*, 946 F.2d at 832). Here, the plain language of claim 1 of the '422 Patent specifies that the annular rib is formed *when* the outer barrel is axially compressed. A device having all of the limitations specified in claim 1 thus infringes if the relevant collapsible band forms an annular rib when the outer barrel is axially compressed; the device does not need to actually be compressed as a condition precedent to infringement.

For these reasons, Holland's interpretation of claim 1 is contrary to the ordinary and customary meaning of the claim's terms. Although Holland cites the testimony of PCT's infringement expert, Dr. Dickens, as evidence supporting Holland's interpretation of claim 1, "unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Phillips*, 415 F.3d at 1318. In particular, expert testimony should be discounted when expert testimony is "clearly at odds with the claim construction mandated by the claims themselves." *Id.* Thus, although Holland quotes Dr. Dickens as stating that Holland's connectors would infringe "when you've crimped it," (Doc. 223 at 4), the Court finds Dr. Dickens' testimony uncompelling.[2]

---

[2] The Court will address Dr. Dickens' subsequent modification of his testimony in its discussion of indirect infringement, *infra*.

Moreover, although Holland argues that its motion for summary judgment is not based upon claim construction but rather "upon Dr. Dickens' admission that, as a factual matter, the accused products as sold by Holland do not meet all the limitations of claim 1," (Doc. 256 at 8), Holland does not contend that its connectors do not form annular ribs when the outer barrel is axially compressed. Rather, Holland's arguments involve the interpretation of the claim language; in particular, Holland is arguing the meaning of "when." This is an issue of claim construction, which is a matter of law for the Court. Thus, because the Court concludes that claim 1 of the '422 Patent recites capability and not actual operation, Holland's arguments fail.[3] Accordingly, Holland has not established that it is not a direct infringer.[4]

### C.   Indirect Infringement

Holland makes two arguments with respect to the issue of indirect infringement. First, Holland asserts that PCT failed to disclose a theory of indirect infringement and the Court should preclude any indirect infringement claim because of this failure to disclose. (Doc. 223 at 5). Second, Holland asserts that PCT cannot show all of the elements of an indirect infringement claim. (*Id.* at 7).

### 1.   Failure to Disclose

Holland argues that PCT failed to timely disclose any theory of indirect infringement and therefore the Court should bar PCT from raising this theory. (Doc. 223 at 5).

### a.   Background

PCT's Complaint alleges that "Holland has infringed and continues to infringe – directly, contributorily, and/or by active inducement the '422 Patent by making, using,

---

[3] This includes Holland's arguments raised in its discussion of indirect infringement relating to connectors not crimped prior to the expiration of the '422 Patent. *See* (Doc. 223 at 8:26-9:9).

[4] Therefore, the Court need not address PCT's other arguments concerning Holland's direct infringement as well as PCT's alternative arguments that Holland failed to timely disclose its non-infringement arguments, at least as far as direct infringement is concerned.

offering to sell, selling, and/or importing the Accused Products within the United States." (Doc. 1 ¶ 13). During discovery, Holland served PCT with an interrogatory asking PCT to "[s]et forth in full and complete detail all information, and identify all facts and circumstances" upon which PCT based this allegation and also for PCT to "identify all witnesses having knowledge of and all documents supporting or relating to" PCT's allegations and contentions. (Doc. 224-21 at 3). PCT responded with references to its analysis and claim charts concerning Holland's allegedly infringing connector models, a list of connector models, and also references to PCT's answers to other interrogatories as having additional responsive information. On the explicit subject of indirect infringement, PCT responded: "In addition, Holland has failed to produce regularly maintained financial documents demonstrating the customers to whom Holland sold specific quantities of infringing products necessary for PCT to assess its claims for indirect infringement. Thus, PCT reserves its right to supplement its answer to this Interrogatory once Holland has produced all responsive documents to PCT's discovery requests." (*Id.* at 4).

PCT later supplemented its response to this interrogatory, stating that the depositions of Holland's witnesses (including exhibits) as well as Dr. Dickens' expert and rebuttal reports (including exhibits) were additional responsive evidence. (Doc. 243-8 at 12). PCT did not further supplement its response. (Doc. 243 at 16). PCT stated in its statement of the case in the parties' Joint Proposed Case Management Plan that PCT violated "35 U.S.C. § 271(a)-(c)." (Doc. 27 at 2). Subsections (b) and (c) of 35 U.S.C. § 271 concern liability for indirect infringement.

### b.    Analysis

Holland argues that under Rule 37(c)(1), PCT cannot pursue an indirect infringement theory because PCT has failed to "fully" disclose this theory. (Doc. 223 at 6). Rule 37(c)(1) provides, in relevant part, that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . . ."

Fed. R. Civ. P. 37(c)(1). Although a theory of liability may fail if Rule 37(c)(1) bars all supporting evidence for that theory, the rule itself concerns the exclusion of only untimely disclosed *evidence*. Because Holland seeks to preclude a legal theory, Holland's argument is more appropriately addressed under the Rule 12(b)(6) standard for failure to state a claim. But because PCT's complaint placed Holland on fair notice that PCT claims Holland is liable for indirect infringement, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), PCT pleaded a claim for indirect infringement (both concerning inducement and contributory infringement).[5]

## 2.    Indirect Infringement Claims

### a.    Prerequisite of Direct Infringement

Holland argues PCT cannot show Holland's liability for indirect infringement because PCT cannot show the necessary prerequisite of direct infringement. (Doc. 223 at 7). Indirect infringement requires an underlying direct infringement, *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 858 (Fed. Cir. 2006), and the patentee must "either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit," *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1303, 1313 (Fed. Cir. 2007).

Holland argues that PCT has failed to identify any specific instances of direct infringement and there is no evidence that the accused Holland connectors necessarily infringe claim 1 of the '422 Patent. (Doc. 223 at 7-8). But PCT's expert Dr. Dickens testified at his deposition that Holland's connectors infringe even before they are crimped on a cable. (Doc. 243-5 at 155). Holland claims that Dr. Dickens instead "admitted that whether or not a connector meets the requirement of the claim that an annular rib is formed depends on what the third-party installer does when the connector is axially compressed onto a piece of coaxial cable." (Doc. 223 at 8). Although Dr. Dickens initially so testified, he later changed his testimony, clarifying that he believed the

---

[5] Even if Holland could seek to preclude a theory of liability, PCT adequately answered Holland's interrogatories such that Holland was on notice that PCT is pursuing indirect infringement claims in this case.

connector had to merely be capable of forming an annular rib.[6] (Doc. 243-5 at 223). Dr. Dickens also stated in his infringement report that each of the Holland connectors accused of infringement literally infringe claims 1 and 11 of the '422 Patent. (Doc. 243-2 at 21). This testimony is sufficient to create an issue of fact.[7]

Holland next contends that there is no evidence that its connectors "necessarily form an annular rib when axially compressed" because the "window" in Holland connectors results in a "deformation of the compression ring in a manner that does not form an annular rib." (Doc. 223 at 8). But Dr. Dickens stated in his infringement report that each accused Holland connector has a collapsible band that forms an annular rib projecting inward as claim 1 of the '422 Patent requires.[8] *See* (Doc. 243-2 at 54, 81, 102, 125; Doc. 243-3 at 3, 19, 35, 50, 70, 86, 105; Doc. 243-4 at 8, 29, 46, 61). Thus, if Dr. Dickens testifies to these opinions at trial, a reasonable jury could conclude that

---

[6] Holland asserts that Dr. Dickens' testimony is inadmissible because Dr. Dickens offered at his deposition claim construction opinions not included in his expert reports. (Doc. 256 at 10). But Dr. Dickens' testimony concerning whether Holland's connectors form an annular rib when axially compressed was not an opinion regarding claim construction; rather it was a fact opinion as to the physical characteristics of the connectors. Thus, there is no basis for excluding this testimony.

Holland also argues that because Dr. Dickens changed his opinion during his deposition, his later testimony is "conclusory and is insufficient to raise a genuine issue of fact." (*Id.*) Dr. Dickens' later testimony was not conclusory; to the contrary, Dr. Dickens thoroughly explained—in response to repeated questioning by Holland's counsel—why his earlier statements were inadvertently incorrect. *See* (Doc. 243-5 at 153-62). Although Holland criticizes Dr. Dickens' credibility, credibility arguments are for trial, not summary judgment.

[7] Thus, Holland's contention that its connectors "may not be used in the United States," (Doc. 223 at 8), is without merit because claim 1 of the '422 Patent concerns capability, and therefore any infringement occurs at the time of production. Whether Holland's connectors are ultimately crimped outside of the United States is irrelevant.

[8] Holland contends that the Court may not rely on Dr. Dickens' expert report because the report itself is inadmissible. (Doc. 256 at 10). But evidence offered *in opposition to* a motion for summary judgment need not be admissible, as long as it can be converted into an admissible form at trial. *Quanta Indem. Co. v. Amberwood Dev. Inc.*, 2014 WL 1246144, at *2 (D. Ariz. Mar. 26, 2014). And although Holland also contends that Dr. Dickens' deposition testimony contradicts his expert report, (Doc. 256 at 10), Holland ignores Dr. Dickens' later deposition testimony, which is consistent with his report. Under Holland's view, an expert witness can never modify his opinion during a deposition because any subsequent opinions by that expert will be contradictions of the expert's initial sworn testimony. This is not the law.

Holland's connectors form an annular rib when axially compressed.

Holland also argues there is no evidence that its connectors have the two non-collapsible wall portions described in claim 1 of the '422 Patent. (Doc. 223 at 8). Again, Holland's argument fails because Dr. Dickens stated in his expert report that each accused Holland connector has a collapsible band extending between a first non-collapsible wall portion and a second non-collapsible wall portion. *See* (Doc. 243-2 at 43, 70, 91, 113, 133; Doc. 243-3 at 10, 26, 42, 59, 77, 94, 116; Doc. 243-4 at 18, 37, 53). Although Holland offers its own expert testimony through its expert Dr. Whittle, the Court cannot weigh the evidence on a motion for summary judgment. Thus, although Holland also contends that Dr. Dickens' opinions are unreliable because the drawings upon which Dr. Dickens relies "do not show the 'window', which has a dramatic impact upon how the collapsible band in the Holland connectors deforms when compressed," (Doc. 223 at 8), this argument goes to the weight to be accorded to Dr. Dickens' testimony, and not to whether there is a genuine issue of material fact.[9] More significantly, Holland fails to develop this argument because it does not cite any evidence. PCT has established the existence of a genuine issue of material fact as to whether Holland's connectors have the necessary collapsible wall portions as claim 1 of the '422 Patent requires.

### b. Inducement

Holland's second major argument concerning indirect infringement is PCT cannot show that Holland is liable for inducement to infringe. (*Id.*) Inducement to infringe is one of the two types of indirect infringement, the other being contributory infringement. *See Dynacore*, 363 F.3d at 1272. "Patent law provides that whoever actively induces infringement of a patent shall be liable as an infringer." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). "Inducement requires a showing that the

---

[9] Holland argues that because Dr. Dickens did not offer any opinions on indirect infringement, he cannot now testify about this subject. (Doc. 223 at 6). But to the extent the Court has relied upon Dr. Dickens' testimony in this Order, his testimony concerns only direct infringement.

alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Id.*

Holland claims there is no evidence showing that Holland knowingly induced direct infringers to commit infringing acts and that Holland possessed a specific intent to encourage this infringement. (Doc. 223 at 9). But Holland knew of the '422 Patent no later than May 1, 2006. (Doc. 243-10 at 82). On August 26, 2006, Holland sent an e-mail to its manufacturer EZconn in which Holland asked for EZconn to replace the ring of Holland's SLCU-6 connector with "another one with a similar shape as the PCT outer shell design." (Doc. 243-10 at 95). Holland describes this new ring as "brass and designed to bend inward with axial pressure." (*Id.*) Holland subsequently sent a second e-mail to EZconn in which Holland asked EZconn to "refine the design of the metal ring" and told EZconn that "[w]e know that EZConn has experience with similar metal designs used for your other customer, PCT." (*Id.* at 98). This is sufficient evidence from which a reasonable jury could conclude that Holland knew of the '422 Patent, knowingly induced infringing acts, and possessed a specific intent to encourage another's infringement of the '422 Patent.

### c.      Contributory Infringement

Next, Holland argues that there is no evidence of contributory infringement. (Doc. 223 at 9). 35 U.S.C. § 271(c) provides:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

Thus, contributory infringement requires an act of direct infringement and that the defendant "knew that the combination for which its components were especially made was both patented and infringing and that [the] defendant's components have no substantial non-infringing uses." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301,

1320 (Fed. Cir. 2009). As the Court has discussed, there is evidence from which a reasonable jury could conclude that Holland knew its connectors infringed the '422 Patent. There is also evidence that the only purpose for Holland's connectors is to be used to connect coaxial cables. (Doc. 243-9 at 22). Accordingly, there is sufficient evidence from which a reasonable jury could conclude that Holland is liable for contributory infringement.

### 3.   Conclusion

For the foregoing reasons, Holland is not entitled to summary judgment on the issue of infringement. Therefore, the Court need not address PCT's contention that Holland's non-infringement arguments were untimely disclosed.

### D.   Damages

Holland moves for partial summary judgment on the issue of damages, raising two arguments. First, Holland seeks to limit PCT's claim for damages to infringement occurring after April 9, 2012 because PCT failed to properly mark its products. (Doc. 223 at 10). Second, Holland contends that some of its sales are not within the United States and therefore are not infringing sales. (*Id.* at 16).

### 1.   Marking

Holland asserts that PCT never marked its products with the '422 Patent number and because of this, PCT is entitled to damages only from the date on which Holland received actual notice of infringement. (*Id.* at 11).

### a.   Background

PCT has never marked its individual connectors with the '422 Patent number. (Doc. 243 at 19). PCT believes the connectors are too small to legibly mark. (*Id.* at 40). Despite this belief, PCT has affixed a label to some of its connectors that bears the PCT logo as well as the PCT part number for the connector. (*Id.* at 20). These labels measure 5 mm in height and have text 2.8 mm in height. (*Id.*) However, according to PCT's vice president, Brandon Wilson, it is not "reasonably practical nor feasible" to add the word "patent" or "pat." along with one or more patent numbers to PCT's labels on its

connectors because "the relevant patent information would be too diminutive in size and illegible to clearly read." (Doc. 243-12 at 2). Wilson also states that "the design and function of PCT's coaxial cable connectors effectively prevents PCT from substantially increasing the size of the label." (*Id.*)

Because PCT believes it cannot legibly mark its individual connectors with the '422 Patent number, PCT instead marks the packaging in which the connectors are sold. (*Id.* at 22). This packaging consists of a plastic bag containing a quantity of connectors. (Doc. 243-8 at 39-73). PCT has produced the engineering drawings for all relevant connector packaging, and these drawings show the '422 Patent number. (Doc. 243 at 17, 22). Wilson testified at his deposition that he believes these engineering drawings reflect the actual connector packaging for PCT's products. (Doc. 243-10 at 10). PCT's contract manufacturers follow these drawings in producing PCT's products. (*Id.* at 11). Moreover, PCT conducted periodic audits of its manufacturers to ensure compliance with its specifications, although patent marking was not explicitly the subject of investigation. (*Id.*)

Wilson also declares that since 2006, "PCT has continuously and consistently marked the packaging for its coaxial cable connectors covered by the '422 Patent with the number of the '422 Patent – along with any other applicable patent numbers." (Doc. 243-12 at 2). Wilson also declares he is not aware of any instance in which a manufacturer failed to comply with PCT's specification for marking the '422 Patent number on PCT's packaging. (*Id.* at 3).

**b.   Legal Standard**

The patent marking statute, 35 U.S.C § 287, "limits recoverable damages where a patentee fails to mark [its] patented products." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1378 (Fed. Cir. 2013). A patentee is "entitled to damages from the time when it either began marking its products in compliance with section 287(a) or when it actually notified [the infringer] of its infringement, whichever was earlier." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir.

1993).

Section 287(a)'s constructive notice provision permits "[p]atentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States" to "give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent . . . or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice." 35 U.S.C. § 287(a). If a patentee fails to mark its products according to these requirements, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." *Id.*

Although section 287(a) permits a patentee to mark the package containing a patented product only if the product "can not" be marked, courts have interpreted this provision as requiring less than absolute physical impossibility. "Alternative marking of the package may sufficiently comply with the statute when there is some reasonable consideration presented for not marking the article due to physical constraints or other limitations, or, for reasons that go to the very purpose of the statute, marking the article itself would not provide sufficient notice to the public." *Rutherford v. Trim-Tex, Inc.*, 803 F. Supp. 158, 162 (N.D. Ill. 1992); *see also Sessions v. Romadka*, 145 U.S. 29, 50 (1892) (a patentee may mark the packaging when it is "doubtful" whether the product can be legibly marked). When marking the product "raises concerns of feasibility or practicality," marking the package may comply with the statute. *Belden Techs., Inc. v. Superior Essex Commc'ns LP*, 733 F. Supp. 2d 517, 534 (D. Del. 2010).

When a product's size requires markings on the product to be so small that they may not effectively notify the public of the patent, marking the packaging is appropriate. *See id.* Markings that require the use of a magnifying glass to be legible are insufficient to satisfy section 287(a). *See Trussell Mfg. Co. v. Wilson-Jones Co.*, 50 F.2d 1027, 1030

(2d Cir. 1931). But "[w]here the patented article has markings or printing on it, other than the appropriate patent marking, then the alternate form of patent markings on the package is not sufficient compliance with the statute." *Rutherford*, 803 F. Supp. at 163. This is because when the "public finds markings or writings upon the article itself, the public should be able to rely upon the fact that a patent, if it exists, should also be noted with that writing." *Id.*

Once a patentee has begun marking its products, the marking "must be substantially consistent and continuous in order for the [patentee] to avail itself of the constructive notice provisions" of section 287(a). *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996).

Finally, in an action for infringement, the patentee bears the burden of proving that it complied with the statutory marking requirements. *Id.* Although this is ordinarily a question of fact, *see id.*, a court may grant summary judgment if no reasonable jury could find that a patentee complied with the marking statute, *Belden*, 733 F. Supp. 2d at 536.

### c.    Analysis

Holland argues that PCT failed to comply with the marking requirement of section 287(a) because PCT cannot show that it was not feasible to mark its individual connectors. (Doc. 223 at 11-12). Holland contends that PCT's labeling of its connectors with its logo and part number shows that PCT could have chosen to mark the connectors but failed to do so. (*Id.* at 12).

PCT argues that it is the custom in the connector industry to mark connector packaging, rather than connectors, with the relevant patent numbers and this industry custom is evidence that it is not feasible for PCT to mark its connectors. (Doc. 238 at 17). The Court notes that nothing in section 287(a) directs a court to inquire as to industry custom, nor can a subjective belief grounded in custom override the plain language of the statute. Other manufacturers' failure to mark according to section 287(a) does not excuse PCT from complying with the same requirements. *See Wayne-Gossard Corp. v. Sondra, Inc.*, 434 F. Supp. 2d 1340, 1364 (E.D. Penn. 1977). Nonetheless, industry custom may

still be probative as to whether it is not feasible for PCT to mark its connectors; the fact that no one marks their connectors may be evidence that it is not feasible to mark a connector of similar size. But the Court is not convinced that PCT's industry custom argument, standing alone, is more than a mere scintilla of evidence upon which to resist summary judgment for Holland.[10] *See Anderson*, 477 U.S. at 252.

More significant evidence exists in the declaration of PCT's vice president Brandon Wilson that it is not reasonably practical or feasible for PCT to mark its connectors because the resulting text would be too small to read. On this point, Holland cites a number of cases in which courts found that the mere presence of other text on the patentee's product demonstrated the feasibility of marking the product. (Doc. 223 at 12). But as PCT points out, each of these cases is distinguishable. Many involve products where the patentee marked the product with patent-related information but omitted the patent number. *See John L. Rie, Inc. v. Shelly Bros., Inc.*, 366 F. Supp. 84, 90-91 (E.D. Penn. 1973) (patentee marked product "PAT PEND." and could have marked "PAT 3002204"); *Creative Pioneer Prods. Corp. v. K Mart Corp.*, 1987 WL 54482, at *3 (S.D. Tex. July 10, 1987) (patentee marked product "MANUFACTURED BY ELCONTROL—ITALY PAT.—PAT. APPL. IN I–UK–WG–F–USA–ROC–J"). Here, PCT never marked its connectors with patent-related information. Second, in the remaining cases cited by Holland, the patentee failed to offer a believable reason for its failure to mark. *See Belden*, 733 F. Supp. 2d at 532, 536 (although the patentee argued the inclusion of patent markings on its cables would violate regulatory standards requiring cable markings to repeat every no more than every 40 inches, the patentee's cables contained 10-14 inches of blank space and repeated their markings every 24 inches); *Briggs & Stratton Corp. v. Kohler Co.*, 398 F. Supp. 2d 925, 972 (W.D. Wis. 2005) (patentee did not argue it was infeasible to mark its product but instead claimed section 287(a) did not apply to "system" patents); *Kadant Johnson, Inc. v. D'Amico*, 2012

---

[10] For this reason, the Court need not address Holland's contention that PCT failed to timely disclose its industry custom evidence. (Doc. 256 at 8).

- 17 -

WL 38319, at *5-6 (E.D. La. Jan. 9, 2012) (patentee affixed an plate to its product upon which the "website address, the model number, the order number, and the temperature and pressure limitations of" the product were stamped, but claimed it could not add its patent number).

In the present case, the fact that PCT marks its connectors with its logo and the product number undermines PCT's argument. On the other hand, PCT marks its product number using text measuring just 2.8 mm tall,[11] hardly the "large, clear print" that Holland purports it to be. Because patent marking must be legible, it is possible that adding a patent number to the labels on PCT's connectors would result in the patent number being so small as to be illegible to the naked eye. Whether PCT can affix labels containing a legible marking of the '422 Patent number to its products is an issue of fact. There is sufficient evidence from which a reasonable jury could conclude that it was not feasible for PCT to legibly mark its connectors with the '422 Patent number.

Holland next argues that PCT failed to mark its packaging in a "substantially consistent and continuous" manner as section 287(a) requires. (Doc. 223 at 13). Holland argues that PCT has not shown that its packaging was actually marked because PCT produced only drawings of labels showing the '422 Patent number. (*Id.*) Holland contends this is not evidence that these labels were actually affixed to packaging containing PCT's products. (*Id.*) Holland also argues that PCT's audits of EZConn's manufacturing process were insufficient to demonstrate that all relevant PCT packaging was marked with the '422 Patent number. (*Id.*)

To survive summary judgment on this point, all PCT must do is present sufficient evidence from which a reasonable jury could conclude that it consistently and continuously marked its packaging with the '422 Patent number. PCT has presented (1) Wilson's testimony that PCT marked all relevant packaging with the '422 Patent number; (2) PCT's engineering drawings showing the '422 Patent number marked on the

---

[11] In the case of PCT's "ERS" connectors, this text is as small as 2.4 mm. (Doc. 240 at 21).

packaging; (3) Wilson's testimony that he, as vice president of PCT, is unaware of any instance in which a contract manufacturer failed to comply with PCT's specifications requiring the marking of the '422 Patent number; and (4) Wilson's testimony that PCT periodically, albeit sporadically and without a formal evaluation process, audited its contract manufacturers to ensure their output complied with PCT's specifications.

Holland claims this evidence is insufficient because these voluntary audits were not comprehensive and because Wilson did not know what procedures were in place to ensure the '422 Patent number was consistently marked on product packaging. (Doc. 223 at 14). Although PCT has the burden of proving compliance with section 287(a) at trial, Holland has the burden of proving it is entitled to summary judgment.[12] PCT has shown sufficient evidence from which a reasonable jury could conclude that it consistently and continuously marked its packaging with the '422 Patent number. Holland's criticisms of Wilson's testimony go to its weight, not to its admissibility, and the Court cannot weigh the evidence on a motion for summary judgment. *See Anderson*, 477 U.S. at 249. Accordingly, Holland is not entitled to summary judgment on the issue of PCT's compliance with section 287(a).[13]

## 2.    Foreign Sales

Holland argues that PCT improperly claims damages for sales of connectors occurring outside of the United States. (Doc. 223 at 16). PCT's damages expert has calculated damages based, in part, on 6,165,642 units that Holland sold but did not deliver within the United States (the "Foreign Sales"). (Doc. 230 at 8). PCT does not contest that these Foreign Sales are not sales within the United States, but asserts Holland offered, within the United States, to sell these units and this offer to sell constitutes infringement. (Doc. 238 at 21).

---

[12] Holland misstates this burden in its reply. (Doc. 256 at 14 n.6).

[13] For this reason, the Court need not address Holland's arguments concerning the date on which PCT gave actual notice of infringement to Holland. (Doc. 223 at 15). Even if the date of actual notice were undisputed, Holland would still not be entitled at summary judgment to limit the period of recoverable damages because there is an issue of fact as to constructive notice.

Section 271(a) provides that "whoever without authority . . . offers to sell . . . any patented invention, within the United States . . . infringes the patent." 35 U.S.C. § 271(a). The issue is whether for purposes of section 271(a), an offer to sell made within the United States for a foreign sale is an infringement. This issue was previously unsettled, *Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp.*, 531 F. Supp. 2d 1084, 1111 (N.D. Cal. 2007), and the parties cite numerous district court opinions to support their respective viewpoints. However, the Federal Circuit has very recently decided this issue:

> The case now before us involves the opposite situation, where the negotiations occurred in the United States, but the contemplated sale occurred outside the United States. We . . . conclude here that [the alleged infringer] did not directly infringe the . . . patents under the "offer to sell" provision by offering to sell in the United States the products at issue, because the locations of the contemplated sales were outside the United States.

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1381 (Fed. Cir. 2014). The Federal Circuit explained:

> An offer to sell, in order to be an infringement, must be an offer contemplating sale in the United States. Otherwise, the presumption against extraterritoriality would be breached. If a sale outside the United States is not an infringement of a U.S. patent, an offer to sell, even if made in the United States, when the sale would occur outside the United States, similarly would not be an infringement of a U.S. patent.

*Id.*

PCT does not dispute that the Foreign Sales occurred outside of the United States. (Doc. 243 at 31). As such, these sales were not infringements of the '422 Patent because Holland did not offer to sell these units within the meaning of section 271(a). PCT is not entitled to damages for the Foreign Sales.

### III.    Motion for Leave to File Non-Electronic Exhibit 26

PCT has filed a motion for leave to file an exhibit in non-electronic form. (Doc. 260 at 2). Specifically, PCT seeks leave to file a CD-ROM containing a copy of a video demonstrating a Holland connector being affixed to a coaxial cable, known to the parties

as "Exhibit 26." (*Id.*) PCT contends that Holland refused to stipulate to the filing of Exhibit 26 despite the fact that filing the exhibit is purely procedural and does not bear upon whether the Court should substantively consider the exhibit. (*Id.* at 2-4).

Section II.M.2 of the Court's Electronic Case Filing Administrative Policies and Procedures Manual governs the *procedure* for filing exhibits in non-electronic form. The filing of an exhibit is unrelated to the issue of whether the Court should substantively consider an exhibit. The Court should not need to remind the parties that exhibits to a summary judgment motion (or response to a summary judgment motion) are not admitted for purposes of deciding that motion merely because they are filed.

Holland does not deny that it forced PCT to file a motion for leave to file Exhibit 26 in non-electronic form, and Holland admits that its opposition to filing Exhibit 26 in non-electronic form is for substantive, not procedural, reasons. (Doc. 263 at 5). Local Rule of Civil Procedure ("Local Rule") 7.2(m)(2) provides that "[a]n objection to (and any argument regarding) the admissibility of evidence offered in support of or opposition to a motion must be presented in the objecting party's responsive or reply memorandum and not in a separate motion to strike or other separate filing." Holland's conduct in forcing PCT to file a motion for leave to file Exhibit 26 and in filing a sixteen page response to PCT's motion certainly violates the spirit, if not the actual rule, of Local Rule 7.2(m)(2).

Because Holland is represented by experienced counsel, the Court can only infer that Holland purposely directed its actions concerning Exhibit 26 in an effort to improperly present an additional sixteen pages of evidentiary arguments to the Court that would not otherwise fit in its motion or its reply. This conclusion is bolstered by Holland's inclusion of a paragraph arguing against the admission of Exhibit 26 in its reply in support of its motion for summary judgment. *See* (Doc. 256 at 11:11-22). Clearly, Holland knew the proper place to raise its substantive arguments. Instead, Holland has forced PCT and the Court to devote valuable resources to what should have been a routine procedural matter. This likely falls within the definition of vexatious. The

Court admonishes Holland to not repeat such behavior.

Because the Court has not needed to consider Exhibit 26 in ruling on any of the other motions in this case, the Court will deny PCT's motion. PCT is not precluded from attempting to admit Exhibit 26 at trial, and at that time, Holland may raise any substantive objections.

**IV.   Motions to Exclude Expert Opinions**

PCT moves to exclude the testimony of Holland's expert witnesses David Haas and Daniel Whittle. (Doc. 229; Doc. 233). These motions are motions to strike testimony, prohibited under Local Rule 7.2(m)(1). Accordingly, the Court will deny these motions without prejudice as procedurally improper. Because the Court has not relied on the testimony of Haas or Whittle in ruling on the other pending motions, these motions to exclude do not impact the Court's analysis in the balance of this Order.

**V.   Conclusion**

As the date for the parties to submit motions in limine is near, the Court reminds the parties that motions in limine are not an opportunity to pre-try the case, and the only motions the Court is prepared to consider are those which seek to preclude statements or evidence which if not precluded would "ring the bell that could not be unrung."

For the foregoing reasons,

**IT IS ORDERED** that Defendant Holland Electronics LLC ("Holland")'s Motion, and Memorandum in Support Thereof, for Sanctions for PCT International Inc's Protective Order Violation (Doc. 222) is denied.

**IT IS FURTHER ORDERED** that Defendant Holland Electronics, LLC's Renewed Motion for Summary Judgment on Infringement, or Alternatively, Partial Summary Judgment on Damages and Renewed Motion to Preclude any Theory of Indirect Infringement for Lack of Disclosure (Doc. 223) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Non-Electronically Exhibit 26 to Plaintiff's Separate Statement of Additional Material Facts in

Support of PCT's Opposition to Holland's Renewed Motion for Summary Judgment (Doc. 260) is denied.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall return to PCT the non-electronic exhibit known as "Exhibit 26" (referenced in Doc. 259).

**IT IS FURTHER ORDERED** that Plaintiff's Resubmitted Motion to Exclude Portions of the Expert Reports of Daniel J. Whittle, PhD (Doc. 229) is denied without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Resubmitted Motion to Exclude the Expert Opinion of David A. Haas (Redacted) (Doc. 233) is denied without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Resubmitted Motion to Exclude the Expert Opinion of David A. Haas (Filed under Seal) (Doc. 237) is denied without prejudice.

Dated this 2nd day of March, 2015.

James A. Teilborg
Senior United States District Judge